h AMY, Judge.
The Louisiana Department of Public Safety and Corrections [DPSC] appeals from the trial court’s order placing J.B. in the custody of DPSC “for purpose of payment [of the cost for feeding and maintaining the juvenile] to the Calcasieu Parish Detention Center,” retroactive to the date of detainment until the date she is released to her parents. We reverse.
DISCUSSION OF THE RECORD
On April 7, 1995, J.B., then fourteen, was declared to be a delinquent child in need of rehabilitation and a proper person for commitment to or placement with DPSC after finding that she committed the offense of carrying a firearm or dangerous weapon on school property, a violation of La.R.S. 14:95.2(A). Following a dispositional hearing, the trial judge ordered that J.B. remain in her mother’s custody and be placed on judicial probation.
On June 16, 1995, the district attorney’s office filed a second petition charging J.B. with violating her probation by staying out past curfew, willingly disregarding |2the reasonable demands of her mother to remain home or ask permission to leave, and maintaining association with a certain male from whom she was explicitly forbidden by the provisions of her judicial probation. J.B. was also charged with contempt of court for failure to comply with the trial court’s prior judgment of disposition. A dispositional hearing was held on that same day, and J.B. was again adjudged delinquent, upon the trial court finding her in violation of her probation and in contempt of court. The trial court ordered that J.B. remain in the custody of her mother, but sentenced her to forty-five days for contempt of court with credit for time served and the remaining fifteen days suspended.
On November 7, 1995, J.B. was again ordered to appear before the trial judge to answer charges that she was violating her *1301 probation and in contempt of court. On this occasion, the assistant district attorney requested that J.B., who was at that time in the provisional custody of the state and had been placed in the Calcasieu Parish Detention Center, be placed with a public or private institution or the DPSC. The trial judge, ruling on the state’s petition, declared J.B. a delinquent in need of rehabilitation, ordered that she be committed to DPSC with commitment being suspended, and sentenced her to thirty days in the Calcasieu Parish Detention Center with credit for time served, with the final nine days being suspended on the contempt of court charge. He also ordered that J.B. continue on judicial probation.
On April 26, 1996, for the third time, the district attorney’s office filed a petition against J.B. for violation of her probation and contempt of court by failing to comply with the trial court’s prior judgment of disposition. The alleged violations included shoplifting and willingly disobeying the reasonable demands of her mother. ^Following a dispositional hearing, the trial judge adjudged J.B. a delinquent child in need of rehabilitation, in contempt of court for probation violations, and committed her to the DPSC pending further orders but not beyond her eighteenth birthday, with the recommendation that she be placed in Girls Village. J.B. remained in Girls Village until her release on June 18,1997.
Following her release, J.B. was again in the custody of her mother. Unfortunately, it was not long before J.B. was again ordered to appear before the court. On this occasion, J.B. was charged with leaving her mother’s home without permission on July 23, 1997 and not returning. On July 29, 1997, J.B. was detained and held in the Calcasieu Parish Juvenile Detention Center. On July 30, the trial judge granted a “motion” filed by the district attorney’s office requesting that the court place J.B. in the custody of DPSC “for the purpose of payment to the Calcasieu Parish Juvenile Detention Center, ... for housing said juvenile, retroactive to the time of his/her being detained, July 29, 1997 with payments to end the date said juvenile is released to parents_” (Emphasis omitted). A petition was subsequently filed against J.B. for this latest indiscretion, however, judgment of disposition of this petition is not contained in the record. However, we note that according to the DPSC’s appellate brief, J.B. remains in her mother’s care under the supervision of the state.
DPSC appeals, alleging that the trial court erred, as a matter of law, when it placed J.B. in the custody of the DPSC “for the purpose of payment to a juvenile detention facility and to make said award retroactive to the date of detention” prior to adjudication.
UMERITS
DPSC contends that the legislature clearly provided for the circumstances under which the state would be liable for payment for the feeding and maintaining of juvenile offenders temporarily housed in parish jails. In all other instances, the DPSC asserts that the “detention becomes a local issue requiring payment by the local governing authority.”
This court, in State in the Interest of J.M., 97-491 (La.App. 3 Cir. 10/29/97); 702 So.2d 994, addressed this exact issue. In that case, it was noted that La.Ch.Code art. 822(B) provides that a “court shall not place a child alleged to be delinquent in the custody of either the department of Social Services or the department of Public Safety and Corrections prior to adjudication.” Further, the Louisiana legislature, in La.R.S. 46:1906(B) articulates the circumstances under which the state becomes liable for the feeding and maintaining of juvenile offenders being held in parish facilities. Such circumstances are as follows:
The department shall pay to the local governing authority for feeding and maintaining each child who is adjudicated delinquent or in need of supervision and committed to the department and who is held in a local institution or facility due to the inability of the department to accept the child the same amount as is paid for keeping and feeding individuals committed to the department and confined in a parish jail.
*1302 La.R.S. 46:1906(B)(1). (Emphasis added). Absent the above requirements, the state will not be liable for the expense of housing juveniles in the parish jails. As to the circumstances present in the case presently under review, the legislature declined to provide for payment by the state for pre-ad-judication expenses incurred by juveniles while housed in local jails. See State in the Interest of J.M., 97-491; 702 So.2d 994.
| sIn the present case, the trial court granted the assistant district attorney’s motion granting custody to DPSC “for purpose of payment” almost two weeks before the actual petition was filed on the latest charge of probation violations and contempt of court. Accordingly, the trial court erred, as a matter of law, in transferring custody to DPSC “for the purpose of payment” retroactive to the date of J.B.’s detention, thereby resulting in DPSC being held liable for pre-adjudication detention expenses.
DECREE
For the foregoing reasons, the decision of the trial court transferring custody to DPSC “for the purpose of payment to the Calcasieu Parish Juvenile Detention Center, ... retroactive to the time ...” she was detained and ending on the date she was released to her mother is reversed. All costs of this appeal are assessed to the appellee.
REVERSED.